UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


RICHARD D. MARCUM                                                           PLAINTIFF


v.                                                      CIVIL ACTION NO. 3:04CV-246-S


HARTFORD LIFE & ACCIDENT INSURANCE COMPANY                        DEFENDANT


**MEMORANDUM OPINION**


This matter is before the court on cross-motions of the parties for judgment in this action

brought under the Employee Retirement Income Security Act ("ERISA), 29 U.S.C. § 1132.  There

is apparently no question that the policy in issue, the Louisville Gas & Electric Company Group

Disability Income Policy (the "Policy"), is part of a self-funded plan qualifying under the terms of

ERISA.  This action arose from the termination of the payment of long-term disability benefits to

the plaintiff, Richard D. Marcum, under that policy.

Marcum was employed by LG&E as a Records Coordinator.   In 1982, Marcum had

reconstructive surgery of his left knee.  He suffered injury to both of his knees and to his back in a

fall in 1999.  He returned to employment periodically until March 11, 2000 when he ceased work.

He applied for and was awarded disability benefits under the Policy.  The Policy contained the

following pertinent provisions:

> We will terminate benefit payment on the first to occur of:
> 1. the date you are no longer Disabled as defined...
>
> **Disability** or **Disabled** means you are prevented from performing one or more of the
> Essential Duties of Any Occupation because of:
> 1. accidental bodily injury;
> 2. sickness;
> 3. Mental Illness; or
> 4. pregnancy,

and as a result you are unable to earn more than an amount that is equal to your Pre-disability Earnings multiplied by the Benefit Percentage.

The Policy, pgs. 5, 11. It further provided that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." The Policy, pg. 10.

On October 25, 2000, Hartford notified Marcum that his claim for benefits had been approved. During a periodic review of Marcum's file, Hartford obtained a Physical Capacities Evaluation Form and other records from Dr. Lawrence Peters, a pain management specialist and Marcum's then-treating physician.[1] On the form, Dr. Peters indicated that Marcum could sit for 6 hours, stand for 1.5 hours, walk for 45 minutes, and drive 5 hours in a workday. He indicated that Marcum could occasionally lift and push or pull up to 10 pounds, but that he could not climb, balance, stoop, kneel, crouch or crawl. He stated that Marcum was "OK for sedentary work," and released him to return to work May 1, 2002.

Hartford reviewed Marcum's records and the information provided by Dr. Peters. It had an occupational analysis performed by its vocational rehabilitation specialist. Hartford then informed Marcum by letter dated May 20, 2002 that he was no longer "Disabled" under the policy definition. The letter set out the reasons for Hartford's decision and put Marcum on notice that his benefits would cease on May 31, 2002.

Marcum appealed the decision by letter dated July 30, 2002 in which he stated that "this correspondence serves to officially appeal on my own behalf the improper assessment initially made by Dr. Peters concerning my medical ability to perform sedentary duties." The letter does not state that the decision of Hartford to terminate benefits was improper based upon the evidence that was before it. Marcum submitted a "corrected" letter from Dr. Peters which stated:

---

[1] In 2002, Marcum was no longer a patient of Dr. Fadel, and was apparently not being followed by an othopedist at this time.

The activity limits given in the Functional Capacities Evaluation that I filled out were filled out, once again, with the understanding that the patient was feeling a whole lot better at that point with that first dosing of the medication. Due to his intolerance of higher doses, it is unlikely we will be able to recapture that very strong level of analgesia, and the patient will continue to have a disabling amount of pain. For this reason, I would consider this patient functionally disabled from even sedentary work.

July 2, 2002 Peters letter.

This reversal in Dr. Peters' evaluation from "ok for sedentary work" to "functionally disabled from even sedentary work" caused Hartford to reinstate Marcum's benefits and to further investigate Marcum's condition. The letter stated that

We considered all of the documents in your claim file, along with your letter of 7/30/02 and Dr. Peters' letter dated 7/2/02. Dr. Peters indicated that while he initially felt you would be capable of full-time sedentary work based on your response to a new medication, this response was not sustained. As a result, he stated that he considers you functionally disabled at this time.

September 23, 2002 Hartford letter.

Hartford had an activity investigation performed on December 2 and 3, 2002 and January 4 and 5, 2003 in which Marcum's activities were videotaped.[2] Marcum's activities captured on film were found by Hartford to belie the extent of impairment he claims he suffers. When interviewed, Marcum claimed that he used a cane when outside of the house. No cane was depicted in the video. He stated that he could not bend at the waist past 45 degrees, squat or kneel. He was shown to bend quite ably to pick up the newspaper on more than one occasion in the video. He stated that he only went out once or twice a week to get something at the store. The video showed Marcum running nine errands over an approximately five hour period on one day, and making eighteen stops over a ten and a half hour period on another day. The video showed Marcum getting in and out of his car and going up and down the front steps without apparent distress. The videos were submitted to Dr. Peters to afford him the opportunity to comment on Marcum's activity level and to state whether he

---

[2]The video footage of Marcum has been made part of the record under seal and has been reviewed by the court. The video images are clear, and are time- and date-stamped.

agreed with Hartford's opinion that the videos evidenced sedentary capacity. March 4, 2003 Hartford letter. Dr. Peters did not respond. An Employability Analysis was performed April 1, 2003 for sedentary work, and Hartford determined that Marcum was not "Disabled" as defined by the Policy. By letter dated April 4, 2003, Hartford informed Marcum that disability benefits were not payable after March 31, 2003, and explained the reasons for its decision. The crux of the decision was Marcum's lack of credibility as to the extent of his impairment in light of the surveillance videos and the lack of response by Dr. Peters to the evidence.

On June 20, 2003, Marcum appealed Hartford's decision. Three months later Marcum submitted another letter from Dr. Peters in which he stated, in pertinent part:

> Both these knees undergo intermittent swelling and have periods where the pain is quite severe and incapacitating. Patients with this diagnosis would be expected to have this type of pattern and there is a chronic consistent level of pain and secondary increased pain that would be associated with increased levels of activity...When the knees do swell, he then has pain which is present at rest or with activity making it quite uncomfortable to stay in one position for any amount of time and really leaving him no avenues of relief...I also believe that he is unable to [sic] sedentary work due to the predisposition for his joints to swell and become very painful even with moderate amounts of activity...In closing, I do not feel that Mr. Marcum is able to engage in any sedentary work now due to chronic pain which flared quite easily and becomes fairly significant.

September 16, 2003 Peters letter.

In October, 2003 Hartford had an independent medical records review performed by Dr. Barry Turner, a board-certified orthopedic surgeon. Dr. Turner concluded based upon the medical record and the activity investigation that Marcum could perform full-time sedentary work. October 21, 2003 Turner report. In formulating his decision, Dr. Turner also discussed the matter with Dr. Peters who apparently indicated that Marcum could work if his employment was "strictly sedentary." October 21, 2003 Turner letter to Peters (confirming the substance of the telephone conversation). By letter dated October 27, 2003, Hartford informed Marcum that it had considered his appeal and had determined to uphold its decision. Again, Hartford's letter explained the basis for its decision which included the independent review by Dr. Turner.

In light of the clear reservation in the Policy of discretionary authority, Hartford's decision must be reviewed by this court under an "arbitrary and capricious" standard. *Perez v. Aetna Life Insurance Co.,* 150 F.3d 550 (6th Cir. 1998); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954-955, 103 L.Ed.2d 80 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998). If the denial of benefits is rational in light of the Policy's provisions; that is, if it is possible to offer a reasoned explanation, based upon the evidence, for the outcome, then the outcome is not arbitrary and capricious. *Yeager v. Reliance Standard Life Insurance Company*, 88 F.3d 376, 381 (6th Cir. 1996); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

Hartford had sufficient evidence in the record upon which to rationally deny Marcum further benefits. Hartford had every reason to question the reversal of position taken by Dr. Peters after Hartford initially terminated Marcum's benefits. Upon investigation, Hartford gathered evidence which could rationally call into serious question Marcum's truthfulness about his level of pain and disability. Dr. Peters is a pain management specialist, not an orthopedic surgeon. At the time of the file review in 2002, Marcum was no longer seeing an orthopedic specialist. As Dr. Peters' professional concern for Marcum was to treat his impairment due to pain, the video footage was particularly relevant to an evaluation of the level of pain reported by Marcum. Dr. Peters' explanation concerning the propensity to swelling in the knees notwithstanding, Hartford had a rational basis in the evidence of record for finding that Marcum could perform sedentary work. The medical records as a whole, coupled with the independent medical records review and employability evaluation more than adequately sustain Hartford's decision to terminate benefits to Marcum.

For the reasons set forth herein, the motion of Hartford for judgment on the record will be granted.  The cross motion of Marcum for judgment will be denied.  A separate order will be entered herein this date in accordance with this opinion.